IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**RONNIE MARCUM, on behalf of**
**the ESTATE OF**
**JEFFERY MARCUM,**

    Plaintiff,

v.                                                          Civil Action No.     2:25-cv-267

**WILLIAM K. MARSHALL, individually**
**as the Commissioner of the West**
**Virginia Division of Corrections and**
**Rehabilitation;**
**TOBY ALLEN, individually as a**
**Superintendent of Southwestern**
**Regional Jail and an employee of the West**
**Virginia Division of Corrections and**
**Rehabilitation;**
**WEXFORD HEALTH SOURCES, INC.;**
**FAITH LOLLIS, LPN, employee of Wexford**
**Health Sources, Inc.;**
**AMBER MARCUM, RN, employee of Wexford**
**Health Sources, Inc.;**
**JOHN/JANE DOE EMPLOYEES OF WEXFORD**
**HEALTH SOURCES, INC.;**
**JOHN/JANE DOE EMPLOYEES OF WVDCR.**

    Defendants.

## COMPLAINT

**COMES NOW**, Plaintiff Ronnie Marcum, on behalf of the Estate of Jeffery Marcum, by the undersigned counsel, and for his Complaint states and alleges as follows based upon personal knowledge and/or information and belief:

### I.     JURISDICTION AND VENUE

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and under its authority to decide pendent state law claims pursuant to 28 U.S.C. § 1367.

1

2. Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983, 1988 and West Virginia state law.

3. Venue is proper because some Defendants can be served with process within the Southern District of West Virginia, Charleston Division, and because the incidents giving rise to this Complaint occurred within the Southern District of West Virginia, Charleston Division.

## II.    PARTIES

4. Plaintiff Ronnie Marcum (hereinafter "Plaintiff") was at all times relevant hereto a resident of Logan County, West Virginia.

5. Plaintiff was duly appointed as the Administrator of the Estate of Jeffery Marcum on May 5, 2023, by the Clerk of the Logan County Commission.

6. Defendant William K. Marshall (hereinafter "Commissioner Marshall") is an employee of the WVDOCR and was at all times relevant hereto acting within the scope of his employment and under color of law as the Commissioner of the WVDOCR.

7. The West Virginia Division of Corrections and Rehabilitation (hereinafter, the "WVDCR") is a state agency under the authority and control of the West Virginia Department of Homeland Security (hereinafter, the "WVDHS"). The WVDCR operates, manages, and controls all state correctional facilities in West Virginia, including Southwestern Regional Jail in Holden, Logan County, West Virginia (hereinafter "SWRJ").

8. As Commissioner of the WVDOCR, Commissioner Marshall was at all times relevant hereto vested with executive authority and responsibility for the

administration, operation, and control of all WVDOCR facilities and employees of WVDOCR facilities. Commissioner Marshall's duties included establishing, monitoring, and enforcing policy directives and procedures that ensure constitutional confinement and treatment of all individuals in the custody of the WVDOCR. See W. Va. Code § 15A-3-4; W. Va. Code § 15A-3-12.

9. Among other things, Commissioner Marshall was charged with ensuring that inmates housed in any West Virginia jail received adequate medical care while incarcerated.

10. Among other things, Commissioner Marshall was charged with ensuring that inmates housed in any West Virginia jail were adequately protected.

11. Commissioner Marshall, who upon information and belief resides in Clay County, West Virginia, is sued for damages in his individual capacity.

12. Defendant Toby Allen (hereinafter "Superintendent Allen") was at all times relevant hereto an employee of the WVDOCR and was at all times relevant hereto acting within the scope of his employment and under color of law as the administrator of SWRJ.

13. Superintendent Allen was tasked by law with the care and custody of all detainees and prisoners incarcerated at SWRJ. Superintendent Allen was vested with authority and responsibility for the safe staffing, administration, operation, and control of SWRJ, including, but not limited to, the oversight of all SWRJ employees, and the authority to promulgate, amend, and implement all policies and procedures within SWRJ to ensure constitutional confinement and treatment of all individuals incarcerated therein. See W. Va. Code § 15A-3-5.

14. Among other things, Superintendent Allen was charged with ensuring that inmates housed in any West Virginia jail received adequate medical care while incarcerated.

15. Among other things, Former Superintendent Allen was charged with ensuring that inmates housed in any West Virginia jail were adequately protected.

3

16. Former Superintendent Allen, who upon information and belief resides in Logan County, West Virginia, is sued for damages in his individual capacity.

17. According to W. Va. Code § 15A-3-1, the purpose of the WVDCR is to "establish a just, humane, and efficient corrections program" in West Virginia (emphasis added).

18. Wexford Health Sources, Inc., (hereinafter "Wexford") is a Florida corporation with its principal place of business in Pittsburgh, Pennsylvania. From June of 2022 to the present, Wexford has been the healthcare provider contracted with the West Virginia Department of Corrections for the provision of medical care at Southwestern Regional Jail.

19. Defendant Wexford was responsible for providing medical care to inmates at SWRJ including Jeffery Marcum. Defendant Wexford is liable for acts and omissions of its agents and employees. Defendant Wexford performed medical acts within the state of West Virginia relating to the provision of medical care at SWRJ.

20. Upon information and belief, Defendant Faith Lollis, LPN, was at all times relevant hereto an employee of Wexford and was acting within the scope of her employment when she provided medical treatment to Jeffery Marcum at SWRJ and, upon information and belief, is a resident of Logan County, West Virginia.

21. Upon information and belief, Defendant Amber Marcum, RN, was at all times relevant hereto an employee of Wexford and was acting within the scope of her employment when she provided medical treatment to Jeffery Marcum at SWRJ and, upon information and belief, is a resident of Logan County, West Virginia.

4

22. Defendants John/Jane Doe, employees of Wexford Health Sources, Inc., are yet to be identified and provided medical treatment to Jeffery Marcum during his pretrial detention/incarceration at SWRJ and/or participated in the development of a treatment plan for Jeffery Marcum during his pretrial detention/incarceration at SWRJ.

23. Defendants John/Jane Doe, employees of WVDCR, are yet to be identified who worked at SWRJ on or about April 15-22, 2023, and dates leading up thereto.

24. All Defendants, excepting Wexford, are sued up to the limits of their insurance policy(s) that provides liability coverage for their actions and omissions, or as otherwise permitted by law.

## STATEMENT OF FACTS

25. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

26. At all times relevant hereto, Plaintiff was incarcerated at SWRJ and in the custody and care of SWRJ.

27. On approximately April 15, 2023, Jeffery Marcum was booked at Southwestern Regional Jail as a pretrial detainee.

28. On approximately April 17, 2023, Maxine Marcum, Jeffery's mother, paid approximately $700 for Jeffery's bail.

29. Despite this payment, Defendants did not process any of the necessary paperwork and Jeffery Marcum remained incarcerated until his death on April 22, 2023.

30. Upon his incarceration into SWRJ, Jeffery Marcum was examined by personnel of Wexford Health Sources, Inc., the contracted medical provider by the State of West Virginia for the State of West Virginia's inmate population.

31. Upon information and belief, Mr. Marcum reportedly stated that he was not on any opiates or other substances at the time of his initial intake at incarceration on April 15, 2023.

32. On approximately April 19, 2023, Mr. Marcum reported to medical that he was having chest pain.

33. It was reported by Wexford personnel that EKG results were normal ("sinus rhythm with sinus arrythmia with short PR otherwise normal") and that "patient had lied during intake about withdrawal and withdrawing from BUP."

34. Upon information and belief, Mr. Marcum was taking suboxone prior to his incarceration and had not received it, nor any withdrawal medication, during his first several days incarcerated.

35. Mr. Marcum was seen on April 19 and 21, 2023, regarding his chest pain and was housed in the medical unit at SWRJ.

36. During these visits, Mr. Marcum was seen by Amber Marcum, RN and Faith Lollis, LPN.

37. On April 19, 2023, Amber Marcum RN noted he had pain that felt like "tightness" and noted Mr. Marcum had fatigue, weakness, skin warm, skin clammy, and moderate level of distress.

38. Despite Mr. Marcum reporting that he was having chest pain and tightness, going through withdrawals, and experiencing symptoms of restlessness,

anxiety, abdominal cramping, and vomiting, on both April 19 and April 21, Mr. Marcum was never sent for outside medical attention.

39. The Medical Provider Defendants failed to appreciate the significance of Mr. Marcum's symptoms, coupled with his complaints of chest pain that was not going away, and failed to exercise proper steps for differential diagnosis in the presence of the same,

40. The Medical Provider Defendants did not send Mr. Marcum to any doctor, upper-level provider, or outside facility for treatment for his chest pain and symptoms.

41. Upon information and belief, and despite continuous chest pain and other symptoms, the Medical Provider Defendants failed to have the Wexford medical provider or mid-level provider(s) examine, treat, or evaluate Plaintiff.

42. On April 22, 2023, Mr. Marcum reportedly walked into the shower and collapsed.

43. Officers and medical responded to Mr. Marcum, wherein he lost consciousness and pulse and was given CPR until EMS arrived.

44. EMS took Mr. Marcum to Logan Regional Medical Center, wherein he passed away due to a cardiac arrest called by Dr. Lonnie Berry.

45. Mr. Marcum should have been released on April 17, 2023, and no release order was ever entered.

46. Had Mr. Marcum been released from the facility when he was supposed to, Mr. Marcum would not have passed away following a cardiac arrest at SWRJ.

47. Defendants violated WVDCR Policy Directive 457.02, at a minimum, by failing to complete all components of the release process paperwork, including the release checklist, to ensure that Mr. Marcum was appropriately released after his mother paid his bail on April 17, 2022.

48. Failing to "timely release" a prisoner from jail and/or prison violates the due process protections of the Fourteenth Amendment to the United States Constitution. *See Crittindon v. LeBlanc*, 37 F.4th 177 (5th Cir. 2022).

49. The Fourteenth Amendment "guarantees to individuals the right to be free from excessive continued detention after a jail or prison ceases to have a legal right to detain the individual." *Powell v. Sheriff*, 511 Fed. Appx. 957, 960 (11th Cir. 2013); *see also Cannon v. Macon County*, 1 F.3d 1558, 1562-63 (11th Cir. 1993) (the Fourteenth Amendment guarantees the "right to be free from continued detention after it was or should have been known that the detainee was entitled to release").

50. Further, Medical Provider Defendants were aware of Mr. Marcum's chest pain and symptoms from April 19, 2023, through his death,] and did not send him out of the facility for medical attention or treatment.

## COUNT I – FOURTEENTH AMENDMENT VIOLATIONS UNDER 42 U.S.C. § 1983

*(WVDCR Defendants)*

51. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

52. Defendants, while acting under color of law and within the scope of their employment, violated the Fourteenth Amendment right of Plaintiffs to free from continued detention when it was known or should have been known that Plaintiff was entitled to release and/or that Defendants ceased to have a legal right to detain them.

53. The actions of Defendants, described hereinabove, violated the constitutional rights guaranteed to Plaintiff, under the Fourteenth Amendment to the United

States Constitution by acting with deliberate indifference towards (or otherwise willfully ignoring) Plaintiff's due process rights.

54. Defendants were deliberately indifferent to, and willfully ignored, the due process rights of Plaintiff by knowingly keeping him detained past his release date when it was known or should have been known that Plaintiff was entitled to release and/or that Defendants ceased to have a legal right to detain them.

55. The actions of Defendants, described hereinabove, were not taken in good faith, were objectively unreasonable, and were in violation of clearly established law.

56. During the time-period at issue, it was clearly established that the over-detention of Plaintiff, as described hereinabove, violated the Fourteenth Amendment to the United States Constitution.

57. The actions of Defendants, described hereinabove, deliberately injured Plaintiffs in a way unjustified by any governmental interest.

58. The actions of Defendants, described hereinabove, shock the conscience.

59. The actions of Defendants, described hereinabove, were unlawful and unjustified.

60. Defendant supervisors likewise exhibited supervisory indifference or tacit authorization of the misconduct of subordinates and the constitutional injuries committed by said subordinates.

61. Defendant supervisors had actual or constructive knowledge that their subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury and the Defendant supervisors' response to said knowledge was so inadequate as to show deliberate indifference or tacit authorization of these constitutional injuries.

62. As a direct and proximate result of Defendants' unlawful, unjustified, and unconstitutional actions, Plaintiff suffered a violation of his Constitutional rights, and was forced to be detained longer than necessary, until his death on April 22, 2023.

63. In addition to these compensatory damages, Plaintiff will also seek to recover, under 42 U.S.C. § 1988, attorneys' fees and cost incurred in this litigation.

64. The actions of Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Plaintiff, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

## COUNT II – NEGLIGENCE

65. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

66. At all times relevant hereto, Defendants owed Plaintiff a duty of care. See *Porter v. Epps*, 659 F. 3d 440, 445 (5th Cir. 2011) (a jailor has "not only the duty to protect a prisoner, but also the duty to effect his timely release").

67. As set forth hereinabove, Defendants, while acting within the scope of their employment, breached their duties of care to Plaintiff to affect his timely release.

68. As a direct and proximate result of Defendants' negligent conduct, Plaintiff suffered actual and foreseeable harm and was detained several days past when he should have been released, until his death on April 22, 2023.

69. The actions of Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Plaintiff, thereby justifying an

award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

70. As a direct and proximate result of the Defendants' negligent, careless and reckless conduct, Mr. Marcum suffered severe bodily injury, conscious pain and suffering, and an untimely death. Plaintiff will seek to recover all damages permitted under the law, including but not limited to, all damages recoverable under the West Virginia wrongful death statute, W. Va. Code § 55-7-6.

## COUNT III - FOURTEENTH AMENDMENT VIOLATIONS UNDER 42 U.S.C. § 1983

### (Deliberate Indifference to Serious Medical Needs)

60. The Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

61. Defendants, while acting under color of law and within the scope of their employment, violated the Fourteenth Amendment right of pretrial detainees to be free of punishment without due process.

62. The actions of Defendants, described hereinabove, violated the constitutional rights guaranteed to Jeffery Marcum under the Fourteenth Amendment to the United States Constitution by acting with deliberate indifference to the serious medical needs of inmates by properly qualified and certified healthcare personnel.

63. As described hereinabove, Defendants routinely failed to provide timely access to necessary and reasonable medical treatment to Jeffery Marcum.

64. Defendants were deliberately indifferent to, and willfully ignored, the serious medical needs of Jeffery Marcum as described hereinabove, by failing to establish, monitor, and/or

enforce policy directives and operational procedures to ensure that Mr. Marcum received prompt and reasonable treatment for his medical needs.

65. Defendants failed to recognize the emergent medical treatment that Mr. Marcum required and while observing his chest pain complaints and symptoms, failed to obtain a medical doctor for him or to send him to an upper-level provider or outside facility, which led to his death on April 22, 2023.

66. Defendant supervisors likewise exhibited supervisory indifference or tacit authorization of the misconduct of subordinates and the constitutional injuries committed by said subordinates.

67. Defendant supervisors had actual or constructive knowledge that their subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury and the Defendant supervisors' response to said knowledge was so inadequate as to show deliberate indifference or tacit authorization of these constitutional injuries.

68. The actions of Defendants, described hereinabove, were not taken in good faith, were objectively unreasonable, and were in violation of clearly established law.

69. During the time-period at issue, it was clearly established that failing to promptly provide necessary and reasonable medical treatment to inmates at SWRJ, as described hereinabove, violated the Fourteenth Amendment to the United States Constitution.

70. The actions of Defendants, described hereinabove, deliberately injured the Plaintiff in a way unjustified by any governmental interest.

71. The actions of Defendants, described hereinabove, shock the conscience.

72. The actions of Defendants, described hereinabove, were unlawful and unjustified.

73. As a direct and proximate result of Defendants' unlawful, unjustified, and unconstitutional actions, Jeffery Marcum suffered a deprivation of his Constitutional rights and physical harm, and will seek compensatory and nominal damages for, *inter alia,* physical pain and discomfort and the physical effects of delayed medical treatment resulting in his death.

74. In addition to these compensatory damages, the Plaintiff will also seek to recover, under 42 U.S.C. § 1988, attorneys' fees and cost incurred in this litigation.

75. The actions of Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Jeffery Marcum, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

## COUNT IV- PROFESSIONAL MEDICAL NEGLIGENCE

76. Plaintiff incorporates herein by reference all preceding paragraphs of the Complaint as if set forth fully herein verbatim.

77. Wexford through its agents and employees, owed Mr. Marcum a duty of care under West Virginia's Medical Professional Liability Act ("MPLA"), West Virginia Code § 55-7B-1, et seq. as the applicable health care provider for Plaintiff.

78. Wexford contracted with the State of West Virginia to provide inmates like Mr. Marcum with constitutionally adequate healthcare which meets the applicable standard of care.

79. Wexford owed a duty of care to Mr. Marcum to make timely and proper evaluation of his condition and provide him with care which met the standard of care and to provide a sufficient number of qualified healthcare personnel at SWRJ as Mr. Marcum was limited to the medical care and response provided by Wexford while housed at SWRJ.

80. Wexford and its employees and agents named herein deviated from the standard of care as set more fully herein, resulting in deliberate indifference to the serious medical needs of Mr. Marcum and causing or contributing to his death.

81. Wexford and its employees and agents deviated from the standard of care by failing to enforce NCCHC standards, failing to comply with requirements to provide a sufficient number s of qualified healthcare providers and personnel, and by failure to adhere to its own policies and procedures, which resulted in Mr. Marcum's death.

82. Wexford Defendants failed to send Mr. Marcum to an upper-level provider or outside medical facility after his reports of chest pain on April 19, 2023, and continuing symptoms through April 21, 2023, prior to his death on April 22, 2023.

83. Wexford's failure, and the failure of the Wexford employees named herein, to provide care during Mr. Marcum's medical emergency directly and proximately caused Mr. Marcum's death. Wexford customarily, through practices and procedures adopted and/or maintained by Wexford routinely resulted in healthcare providers acting outside and beyond the scope of their qualifications or practice, without adequate or legally imposed supervision.

84. Wexford Defendants' failure to follow the accepted standard of care deprived Mr. Marcum of a chance of recovery and increased his risk of harm, which was a substantial factor in bringing about his pain, suffering, and untimely death.

85. As a direct and proximate result of the Defendants' negligent, careless and reckless conduct, Mr. Marcum suffered severe bodily injury, conscious pain and suffering, and an untimely death. Plaintiff will seek to recover all damages permitted under the law,

including but not limited to, all damages recoverable under the West Virginia wrongful death statute, W. Va. Code § 55-7-6.

86. The actions of Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Mr. Marcum, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

87. By their actions and inactions set forth herein, all of the Medical Defendants failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider acting in the same or similar circumstances.

88. Defendant Amber Marcum, R.N., while employed by or in agency for Defendant Wexford Health Sources, Inc., breached the standard of care owed to Plaintiff through her failure to exercise the degree of care, skill, and learning required or expected of the reasonable, prudent health care provider of her credentials and specialization acting under the same or similar circumstances.

89. Defendant Faith Lollis, LPN, while employed by or in agency for Defendant Wexford Health Sources, Inc., breached the standard of care owed to Plaintiff through her failure to exercise the degree of care, skill, and learning required or expected of the reasonable, prudent health care provider of her credentials and specialization acting under the same or similar circumstances.

90. Defendants John/Jane Doe medical providers, while employed by or in agency for Defendant Wexford Health Sources, Inc., breached the standard of care owed to Plaintiff through her failure to exercise the degree of care, skill, and learning required or expected of the reasonable, prudent health care provider of his/her credentials and specialization acting under the same or similar circumstances.

91.  Wexford is vicariously liable for the actions and omissions of its employees and agents committed within the scope of their employment and agency.

**WHEREFORE**, Plaintiff, individually and on behalf of the Estate of Jeffery Marcum requests that the Court:

a)  Award all compensatory damages allowed by law;

b)  Award punitive damages, where applicable;

c)  Award attorney's fees and costs incurred during the course of this litigation, pursuant to 42 U.S.C. § 1988;

d)  Grant any and all relief Plaintiff may be entitled to in law or equity; and

e)  Any further relief this Honorable Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

        RONNIE MARCUM on behalf of
the ESTATE OF JEFFERY MARCUM

**By Counsel**

*/s/ Stephen P. New*
Stephen P. New (WVSB No. 7756)
Emilee B. Wooldridge (WVSB No. 14310)
Stephen New & Associates
430 Harper Park Drive
Beckley, West Virginia 25801
Ph: (304) 250-6017
Fax: (304) 250-6012
steve@newlawoffice.com
emilee@newlawoffice.com

  Timothy Lupardus (WVSB No. 6252)
  The Lupardus Law Office
  275 Bearhole Road
  Pineville, West Virginia 24874
  (304) 732-0250

office@luparduslaw.com

Zachary Whitten (WVSB No. 13709)
The Whitten Law Office
P.O. Box 753
Pineville, West Virginia 24874
zwhittenlaw@gmail.com

Thomas P. Boggs, Esq. (WV Bar No. 10681)
WARNER LAW OFFICES, PLLC
P. O. Box 3327
Charleston,
WV  25333
(304) 345-6789
*tboggs@wvpersonalinjury.com*