IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

RONNIE MARCUM, *on behalf of*
*the Estate of Jeffery Marcum*,

            Plaintiff,

v.                                         CIVIL ACTION NO.   2:25-cv-00267

WILLIAM K. MARSHALL, et al.,

            Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Plaintiff's *Complaint* (Document 1), *Defendant Toby Allen's Motion to Dismiss* (Document 16), the *Memorandum of Law in Support of Defendant Toby Allen's Motion to Dismiss Plaintiff's Complaint* (Document 17), the *Plaintiff's Response in Opposition to Defendant Toby Allen's Motion to Dismiss Plaintiff's Complaint* (Document 20), and *Defendant Toby Allen's Reply in Support of Motion to Dismiss* (Document 27).   The Court has also reviewed *Defendant Wexford Health Sources, Inc.'s Motion to Dismiss* (Document 9), the *Memorandum of Law in Support of Defendant Wexford Health Sources, Inc.'s Motion to Dismiss* (Document 10), the *Plaintiff's Response in Opposition to Defendant Wexford Health Sources, Inc.'s Motion to Dismiss (ECF 9) and Memorandum of Law in Support (ECF 10)* (Document 21), and *Defendant Wexford Health Sources, Inc.'s Reply in Support of Its Motion to Dismiss* (Document 23).   In addition, the Court has reviewed *Defendant Amber Marcum's Motion to Dismiss* (Document 13), the *Memorandum of Law in Support of Defendant Amber Marcum's Motion to Dismiss* (Document

14), the *Plaintiffs' Response in Opposition to Defendant Amber Marcum's Motion to Dismiss (ECF 13) and Memorandum of Law in Support (ECF 14)* (Document 22), and *Defendant Amber Marcum's Reply in Support of Her Motion to Dismiss* (Document 24).

### FACTUAL ALLEGATIONS

The Plaintiff in this matter is Ronnie Marcum, on behalf of the Estate of Jeffery Marcum (hereinafter, Mr. Marcum). Decedent Jeffery Marcum was booked at Southwestern Regional Jail (SWRJ) in Logan County, West Virginia, as a pretrial detainee on or about April 15, 2023, and remained incarcerated until his death on April 22, 2023. The Plaintiff names the following Defendants: William K. Marshall, who was Commissioner of the West Virginia Division of Corrections and Rehabilitation (WVDCR) during his period of incarceration; Toby Allen, who was Superintendent of SWRJ during his period of incarceration; Wexford Health Sources, Inc., the healthcare provider contracted to provide medical care at SWRJ; Faith Lollis, an LPN employed by Wexford; and Amber Marcum, an RN employed by Wexford.

Wexford Health personnel examined Mr. Marcum upon his incarceration, and he reportedly indicated that he was not on opiates or other substances at that time. However, he was taking suboxone prior to his incarceration and had not received it or any other withdrawal medication during his first several days of incarceration. On or about April 19, 2023, he reported to medical that he was having chest pain. Wexford personnel did an EKG and reported that the results were normal, specifically noting "sinus rhythm with sinus arrythmia with short PR otherwise normal." (Compl. at ¶ 33.) He was seen for chest pain again on April 21, 2023, and he was housed in the medical unit. Amber Marcum, RN, and Faith Lollis, LPN, saw him on both visits. Ms. Marcum noted "fatigue, weakness, skin warm, skin clammy, and moderate level of

2

distress," in addition to pain/tightness in his chest, on April 19, 2023. Mr. Marcum was also experiencing restlessness, anxiety, abdominal cramping, and vomiting at the time of both visits. Ms. Marcum, Ms. Lollis, and Wexford did not refer him for outside medical attention or an upper-level provider despite his ongoing chest pain and other symptoms. Wexford and its employees deviated from the standard of care by lacking an adequate number of providers, failing to adhere to Wexford's own policies and procedures, and failing to send Mr. Marcum to an upper-level provider or outside medical facility in response to his reported ongoing chest pain. Wexford's conduct was consistent with its practice of having healthcare providers act beyond the scope of their qualifications without adequate supervision.

On April 22, 2023, Mr. Marcum collapsed in the shower and lost consciousness and pulse. He was given CPR until EMS arrived. He was transported by EMS to Logan Regional Medical Center, where he died of cardiac arrest.

Mr. Marcum's mother paid approximately $700 for his bail on April 17, 2023. The Defendants failed to process the paperwork, no release order was ever entered, and Mr. Marcum remained incarcerated after the bail payment until his death.

As Commissioner of the WVDCR, Mr. Marshall was responsible for the administration, operation and control of all WVDCR facilities and employees. Those responsibilities include "establishing, monitoring, and enforcing policy directives and procedures that ensure constitutional confinement and treatment of all individuals in the custody of the WVDOCR." (*Id.* at ¶8.) Mr. Marshall was "charged with ensuring that inmates housed in any West Virginia jail received adequate medical care." (*Id.* at ¶ 9.) Superintendent Allen had similar responsibilities as to SWRJ. The Plaintiff alleges that they "exhibited supervisory indifference or tacit

3

authorization of the misconduct of subordinates" and "had actual or constructive knowledge that their subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury." (*Id.* at ¶¶ 60-61.)

In addition to the named Defendants, the Plaintiff names John/Jane Doe employees of Wexford Health Sources, Inc., and John/Jane Doe employees of the WVDCR. The Plaintiff asserts the following causes of action: Count I – Fourteenth Amendment Violations Under 42 U.S.C. § 1983, as to the WVDCR Defendants; Count II – Negligence; Count III – Fourteenth Amendment Violations Under 42 U.S.C. § 1983 (Deliberate Indifference to Serious Medical Needs); and Count IV – Professional Medical Negligence.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading. *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at

555. Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679. Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570). A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to

5

dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

## DISCUSSION

Defendants Toby Allen, Wexford Health, and Amber Marcum each separately moved to dismiss based on, inter alia, failure to set forth a sufficient factual basis for the claim(s) against them, qualified immunity, and failure to allege the specific standards of care violated for medical claims.

### A. Superintendent Toby Allen

Defendant Allen contends that the complaint lacks any specific factual allegations against him, but instead contains only general, conclusory allegations. He argues that the complaint does not allege his personal involvement in any constitutional violation, nor does it allege his actual or constructive knowledge of the conduct of subordinates that pose a risk of constitutional injury. In addition, he argues that he is entitled to qualified immunity. He argues that there is no allegation that he deprived Mr. Marcum of any constitutional or other right. Defendant Allen contends that vague assertions of inadequate oversight are insufficient to establish that he violated a clearly established right.

The Plaintiff argues that he has set forth a sufficient factual basis for his claims, citing his allegations that Mr. Allen was the Superintendent at SWRJ with responsibility for the care and custody of inmates, as well as the responsibility for ensuring policies were followed, and the Plaintiff was unlawfully incarcerated after his bail was paid. The Plaintiff contends that "had Defendant Allen upheld his responsibilities as Superintendent of SWRJ, Mr. Marcum would not have died following a cardiac arrest at SWRJ." (Pl.'s Resp. at 4) (Document 20.) He argues that

"Defendant Allen himself was deliberately indifferent to a substantial risk of infringing upon Mr. Marcum's personal liberty protected by the substantive due process clause of the Fourteenth Amendment."  (*Id.* at 6.)   The Plaintiff argues that Mr. Marcum was unconstitutionally held after he became entitled to release.   He further contends that the right to be freed from detention when legally entitled is clearly established, and Defendant Allen is not entitled to qualified immunity for violating that right.

42 U.S.C. § 1983 establishes a cause of action against state actors who deprive individuals of constitutional rights.   *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 202 (4th Cir. 2002).   Unlawfully incarcerating a pretrial detainee violates the Fourth Amendment.   *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 368 (2017); *see also Doe v. DeWees*, No. CV TDC-18-2014, 2020 WL 1331902, at *20–21 (D. Md. Mar. 23, 2020), *clarified on denial of reconsideration*, No. CV TDC-18-2014, 2020 WL 13902279 (D. Md. June 2, 2020) (finding that similar claims of failure to timely release a pretrial detainee after notice of *nolle prosequi* and entry of a release order were viable against those state employees who were responsible for and/or aware of the delay).   Although § 1983 generally imposes liability for affirmative misconduct, bystander liability and supervisory liability have both been recognized as permissible theories of indirect liability under limited circumstances.   *Randall*, 302 F.3d at 202.   The Fourth Circuit has set forth the following elements for supervisory liability claims under § 1983:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices,; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

7

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal punctuation omitted).

The Plaintiff has alleged that Mr. Marcum was held after his bail had been paid. Defendant Allen's argument that there is no constitutional right to bail is unavailing here, where the Plaintiff alleges that bail was set in his case, and his mother paid that bail, yet he remained incarcerated. However, the allegations in the complaint do not adequately tie Defendant Allen to the constitutional violation. The complaint does not detail what role, if any, Mr. Allen, as Superintendent of SWRJ, played in processing bail or release paperwork, either for inmates in general or for Mr. Marcum specifically. There are no allegations that, if proven, would demonstrate that Mr. Allen directly established a policy or custom responsible for Mr. Marcum's unlawful detention, had a direct role in Mr. Marcum's unlawful detention, or was aware of subordinate(s)' failure to observe policies designed to ensure the prompt release of pretrial detainees after payment of bail. Simply being the Superintendent is not sufficient to establish § 1983 liability for all constitutional violations at SWRJ. For the same reasons, the complaint does not contain sufficient factual allegations connecting Mr. Allen's actions or inactions with the failure to release Mr. Marcum to state a claim for negligence. Because the Court finds that the Plaintiff has not stated a § 1983 claim or a state negligence claim against Defendant Allen, it is unnecessary to reach his qualified immunity defense.

### B. *Wexford Health*

Defendant Wexford Health argues that the Plaintiff has not asserted facts that would establish that Mr. Marcum's death resulted from a custom or policy of Wexford, as required for corporate liability under 42 U.S.C. § 1983. In addition, it argues that the Plaintiff has not stated

a claim under the West Virginia Medical Professional Liability Act (MPLA) because the complaint does not plead the specific standard of care that Wexford and its employees allegedly violated.

The Plaintiff argues that he adequately alleged that Wexford Health failed to provide sufficient qualified healthcare providers on-site and failed to refer Mr. Marcum to an emergency room or other outside provider. He contends that he has adequately alleged a policy or custom of inadequate provision of care that resulted in Mr. Marcum's death. The Plaintiff argues that he sufficiently pled "Wexford's knowledge of and disregard of excessive risk to Plaintiffs' health or safety created by persistent (pervasive) understaffing and chronic and excessive overdue tasks and nurse sick calls." (Pl.'s Resp. at 11) (Document 21.) He further contends that the allegation that Wexford and its employees breached the standard of care by failing to refer him to a mid-level, physician, or outside provider when he reported symptoms including chest pain, chest tightness, clammy skin, distress, and fatigue is sufficient to state a claim under the MPLA.

The Fourth Circuit recently held that the test for deliberate indifference under the Fourteenth Amendment is objective, in contrast to the subjective test applied for such claims under the Eighth Amendment. *Short v. Hartman*, 87 F.4th 593, 608–09 (4th Cir. 2023) (relying on *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015)). The court set forth the standard as follows:

> To state a claim for deliberate indifference to a medical need, the specific type of deliberate indifference claim at issue in this case, a pretrial detainee must plead that (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

*Id.* at 611.

Because Wexford is a private corporation rather than an individual, the Plaintiff must also show that the deprivation of rights resulted from application of an official policy or custom. *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727–28 (4th Cir. 1999) (applying the "principles of § 1983 municipal liability articulated in *Monell* and its progeny" to private corporations).

> A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (internal punctuation and quotation marks omitted).

The Plaintiff has pled that Mr. Marcum reported cardiac symptoms, including persistent chest pain, clammy skin, fatigue, and distress, which posed a substantial risk of serious harm. Medical staff did not ensure he saw a higher-level provider for a cardiac workup, even when he reported continuing chest pain two days after his initial report. The complaint alleges that about three days after first reporting chest pain to medical personnel, without having seen a physician or received meaningful care for cardiac issues, Mr. Marcum died of cardiac arrest. The complaint also alleges that supervisory personnel were aware of the misconduct of subordinates and that Wexford routinely failed to provide timely access to medical treatment and failed to provide properly qualified and certified healthcare personnel. The Court finds those allegations sufficient, at this stage, to plead a §1983 deliberate indifference claim as to Defendant Wexford.

Although perhaps not artfully pled, the Court finds the Plaintiff's allegations sufficient as to the state law Professional Medical Negligence claim as well. The West Virginia Medical Professional Liability Act provides that:

> The following are necessary elements of proof that an injury or death resulted from the failure of a health care provider to follow the accepted standard of care:
> (1) The health care provider failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and
> (2) Such failure was a proximate cause of the injury or death.

W. Va. Code § 55-7B-3(a). The Plaintiff has alleged that Wexford "owed a duty of care to Mr. Marcum to make timely and proper evaluation of his condition and provide him with care which met the standard of care and to provide a sufficient number of qualified healthcare personnel at SWRJ." (Compl. at ¶ 79.) He alleges that Wexford did not have an adequate number of qualified healthcare providers and personnel and failed to send Mr. Marcum to an upper-level provider based on his reported chest pain. Thus, he has alleged that the care expected of a reasonable, prudent nurse, faced with a patient with Mr. Marcum's symptoms, would start with ensuring the patient saw a higher-level provider to appropriately diagnose and treat his persistent chest pain and related symptoms. He has also alleged that Mr. Marcum died of cardiac arrest because he did not receive prompt, appropriate medical attention. Therefore, the Court finds the factual allegations sufficient to state a claim under the MPLA, and Wexford's motion to dismiss will be denied.

### C. Amber Marcum

Defendant Amber Marcum moves for dismissal on similar grounds to those presented by Wexford Health. She contends that the complaint does not plausibly allege deliberate

11

indifference because the factual allegations do not support a conclusion that she knew of and disregarded a substantial risk of serious harm. She argues that even negligent medical treatment is insufficient to state a constitutional violation. Ms. Marcum further argues that the Plaintiff failed to state a claim under the MPLA because the complaint does not specify the standard of care that was allegedly breached.

The Plaintiff argues that Ms. Marcum exhibited deliberate indifference by failing to provide appropriate care, including ensuring Mr. Marcum was seen by a higher-level provider either within or outside SWRJ, in response to symptoms consistent with incipient cardiac arrest. He contends that even a layperson would know that Mr. Marcum's symptoms pointed to an incipient heart attack, and as a registered nurse, Ms. Marcum's failure to respond appropriately to those symptoms, which continued for three days, constitutes deliberate indifference to a serious medical need. The Plaintiff argues that the same facts support his MPLA claim: failing to ensure Mr. Marcum saw a higher-level provider for a cardiac workup breached the standard of care and caused his death.

For the same reasons the Court found that Wexford's motion to dismiss should be denied, the Court finds that Ms. Marcum's motion to dismiss should be denied. The Plaintiff clearly alleges that Wexford and Ms. Marcum breached the standard of care by failing to ensure that a patient with persistent chest pain, chest tightness, clamminess, distress, weakness, and fatigue was seen by a higher-level provider for a cardiac workup, and Mr. Marcum died of a heart attack as a result. Those alleged facts state a § 1983 claim for deliberate indifference and a medical negligence claim under the MPLA.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Defendant Toby Allen's Motion to Dismiss* (Document 16) be **GRANTED** and that Counts One and Two as to Defendant Toby Allen be **DISMISSED without prejudice**. The Court further **ORDERS** that *Defendant Wexford Health Sources, Inc.'s Motion to Dismiss* (Document 9) and *Defendant Amber Marcum's Motion to Dismiss* (Document 13) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: December 16, 2025

*/s/ Irene C. Berger*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA