**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

RONNIE MARCUM, *on behalf of*
*the Estate of Jeffery Marcum*,

Plaintiff,

v. CIVIL ACTION NO. 2:25-cv-00267

WILLIAM K. MARSHALL, et al.,

Defendants.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed several motions in limine filed in this matter and provides the rulings below to assist the parties in preparing for trial. Because several of the motions seek to exclude or limit testimony from expert witnesses, the Court sets forth the following standard applicable to those motions:

## LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Supreme Court explained that "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable," emphasizing that

the standard is flexible. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). The Supreme Court further explained that the Rule 702 standard is permissive, given that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 596. The Fourth Circuit has urged courts to "be mindful that Rule 702 was intended to liberalize the introduction of relevant expert evidence." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). However, "given the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded." *Id.*

The first requirement, that the expert testimony be helpful to the trier of fact, is the "touchstone" of the Rule. *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993). To be helpful, the testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591. Testimony that is "within the common knowledge of the jurors" should be excluded, as it "almost by definition, can be of no assistance to a jury." *United States v. Harris*, 995 F.2d 532, 534 (4th Cir. 1993). "An expert's opinion is helpful only to the extent the expert draws on some special skill, knowledge, or experience to formulate that opinion." *Ancho v. Pentek Corp.*, 157 F.3d 512, 518 (7th Cir. 1998) (citing *U.S. v. Vitek Supply Corp.*, 144 F.3d 476, 486 (7th Cir. 1998)).

The burden is on the proponent of the expert testimony to establish, by a preponderance of the evidence, that the expert testimony satisfies Rule 702. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert*, 509 U.S. at 592). A court "abandon[s] its gatekeeping function" when it permits a jury to consider the weight of testimony without first

addressing its reliability. *Nease v. Ford Motor Co.*, 848 F.3d 219, 230-31 (4th Cir. 2017). Although no single factor is dispositive, courts, as gatekeepers, must evaluate "whether a given theory has been tested," whether it is supported by literature in the field, whether it is has been subjected to peer review and publications, and the extent to which it "has been accepted within the relevant scientific or engineering community." *Id.* at 231-32.

*A. Expert Alicia Jones*

The Court has reviewed *Defendants Wexford Health Sources, Inc., Amber Marcum, and Faith Lollis' Motion in Limine to Exclude the Opinions and Testimony of Plaintiff's Nursing Expert Alicia Jones* (Document 126) and the *Plaintiff's Response in Opposition to Defendants Wexford Health Sources, Inc., Amber Marcum, and Faith Lollis' Motion in Limine to Exclude the Opinions and Testimony of Plaintiff's Nursing Expert Alicia Jones* (Document 134). Ms. Jones is a registered nurse with experience working in a correctional setting, and the Defendants do not challenge her general qualifications. Instead, they note the lack of citations in her report and contend that she was unable to "connect any of those findings [in her report] to a published standard upon which she actually relied." (Def.s' Mot. at 3.) They argue that Ms. Jones' opinions are based upon her own judgment, rather than recognized standards of care, and are not sufficiently reliable to be admissible as expert opinions.

The Plaintiff argues that Rule 702 does not require an experienced nurse offering testimony regarding the standard of care to cite specific published guidelines or standards. He argues that Ms. Jones' report details her experience, her knowledge of correctional nursing and her facility's written protocols, her review of the medical records in this case, and the ways in which Mr. Marcum's care was inconsistent with accepted practices. He also notes that Ms. Jones connected

some of her criticisms to the specific protocols in effect in the Southwestern Regional Jail. The Plaintiff contends that any failure by Ms. Jones to cite published authorities goes to the persuasive weight of her opinions, not their admissibility.

Ms. Jones' expertise in correctional nursing may be helpful to the jury in evaluating whether the nursing care provided to Mr. Marcum fell within the standard of care. The Court finds her proposed testimony sufficiently reliable to survive the Court's gatekeeping function. She carefully and thoroughly reviewed the medical records generated by the Defendants. The Defendants may explore her failure to cite written standards on cross examination, and a jury will decide how much weight to give her opinions. The Defendants remain free to object to any specific opinions that are presented without an adequate basis, but the Court finds no grounds for the wholesale exclusion of Ms. Jones as an expert on the nursing standard of care. The Court **ORDERS** that *Defendants Wexford Health Sources, Inc., Amber Marcum, and Faith Lollis' Motion in Limine to Exclude the Opinions and Testimony of Plaintiff's Nursing Expert Alicia Jones* (Document 126) be **DENIED**.

*B. Expert Lonnie Berry, M.D.*

The Court has also reviewed the *Defendants' Motion to Exclude Lonnie Berry, M.D. From Offering Opinions Regarding the Cause of Death at Trial* (Document 127) and the *Plaintiff's Response in Opposition to Defendants' Motion to Exclude Lonnie Berry, M.D. From Offering Opinions Regarding the Cause of Death at Trial* (Document 133).

Dr. Berry treated decedent Jeffery Marcum when he was transported to Logan Regional Medical Center after suffering a medical emergency at Southwestern Regional Jail on April 22, 2023. The Defendants argue that "Dr. Berry's opinions regarding the underlying cause of death

are not reliable because they were formed without the critical postmortem evidence subsequently obtained through autopsy and do not reliably identify any particular condition as the cause of death." (Def.s' Mot. at 3.) They argue that his opinion regarding the cause of death was based on lab results, before the autopsy results identifying internal injuries were known. Therefore, they contend that Dr. Berry's opinion regarding cause of death has the potential to mislead the jury.

The Plaintiff argues that "[a] treating physician who forms a causation opinion from his own examination and his own contemporaneous laboratory data employs a reliable method." (Pl.'s Resp. at 2.) He argues that Dr. Berry's opinion was based on the objective findings adduced during his treatment of Mr. Marcum, including labs and bloodwork, which constitute a reliable methodology. Ultimately, he contends the jury should be permitted to "weigh the two accounts [of Dr. Berry and of the medical examiner, Dr. Savasman] with the aid of cross-examination and competing testimony." (*Id.* at 7.)

The Court finds that Dr. Berry's proposed testimony meets the strictures of Rule 702. There is no dispute that he is qualified as an expert based on his education, training, and experience as an ER doctor. He was Mr. Marcum's treating physician when he presented to the emergency room, and his specialized medical knowledge will help the jury understand Mr. Marcum's condition. The testimony is based on test results and observations during his treatment of Mr. Marcum, and it is the product of reliable principles and methods, appropriately applied to the facts of the case. The Court refuses to adopt the Defendants' presumption that a treating physician cannot make a diagnosis or form a reliable opinion on the cause of death of a patient without performing an autopsy. And, as discussed below, just as Dr. Berry reached his conclusions without reference to the additional information garnered during the autopsy, Dr. Savasman reached

his conclusions without the results of Dr. Berry's lab tests or medical records from the ER visit. Cross examination, rather than exclusion, is the appropriate mechanism for informing the jury of any flaws in Dr. Berry's analysis. Therefore, the Court **ORDERS** that the *Defendants' Motion to Exclude Lonnie Berry, M.D. From Offering Opinions Regarding the Cause of Death at Trial* (Document 127) be **DENIED**.

*C. EKG Evidence*

The Court has reviewed the *Defendants' Motion to Preclude Any Testimony or Argument at Trial That the April 19, 2023 EKG Was Fabricated, Falsified, or Manufactured* (Document 128) and the *Plaintiff's Response in Opposition to Defendants' Motion to Preclude Any Testimony or Argument at Trial That the April 19, 2023 EKG Was Fabricated, Falsified, or Manufactured* (Document 135). The Defendants note that the Plaintiff has "repeatedly accused Wexford and its personnel of fabricating the EKG performed upon Mr. Marcum on April 19, 2023." (Defs.' Mot. at 2.) They contend that the Plaintiff has failed to produce evidence to support those accusations. Thus, they argue that any evidence or argument regarding perceived inconsistencies with the EKG would be irrelevant and unduly prejudicial. The Plaintiff argues that discovery related to the *Plaintiff's Motion for Default Judgment and Sanctions* (Document 103) regarding the alleged falsification of the EKG remains ongoing, and any determination regarding the authenticity of the EKG should not take place until the Court rules on the motion for default judgment and sanctions.

Judge Aboulhosn recently entered an *Order* (Document 139) permitting supplemental briefing on the motion for default judgment and sanctions. Because the potential admissibility of evidence related to the authenticity of the EKG may be affected by the outcome of the motion for default judgment and sanctions, the Court **ORDERS** that the *Defendants' Motion to Preclude Any*

*Testimony or Argument at Trial That the April 19, 2023 EKG Was Fabricated, Falsified, or Manufactured* (Document 128) be **HELD IN ABEYANCE**.

*D. Untimely Disclosed Witnesses*

The Court has reviewed the *Defendants' Motion in Limine to Exclude Plaintiff's Untimely Disclosed Witnesses* (Document 129) and the *Plaintiff's Response in Opposition to Defendants' Motion in Limine to Exclude Plaintiff's Untimely Disclosed Witnesses* (Document 137).

The Defendants indicate that the Plaintiff identified 23 new witnesses in his September 9, 2026 supplemental disclosure. Because the disclosure took place after the expiration of discovery deadlines, they argue that they would be prejudiced by permitting the Plaintiff to support his claims with these witnesses. The Defendants argue that the disclosure is untimely under the Court's scheduling order and does not comply with Rule 26 of the Federal Rules of Civil Procedure. They argue that the disclosure is neither substantially justified nor harmless, in light of the approaching trial date and expiration of the discovery deadline and the dispositive motions deadline.

The Plaintiff contends that his initial Rule 26(a)(1) disclosures and interrogatory responses put the Defendants on notice that the Plaintiff might rely on "this category of witnesses," most of the witnesses are the Defendants' own current or former employees or corporate designees, and the Court rejected a "materially identical" exclusion argument earlier in this case. (Pl.'s Resp. at 2.) He argues that the Defendants are well aware of the identities, roles, and contact information of their own current and former employees or agents, and that the records related to emergency medical services providers who responded to Mr. Marcum's medical emergency are already in both parties' possession. He further contends that any surprise can be cured through permitting brief depositions or interviews prior to trial.

Federal Rule of Civil Procedure 26(a)(1)(A)(i) requires disclosure of "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to supports its claims or defenses, unless the use would be solely for impeachment." These disclosures are to be made within 14 days after the Rule 26(f) conference and must be supplemented in a timely manner if a party becomes aware of new information. Fed. R. Civ. P. 26(a)(1)(C) and (e). Pursuant to Rule 37(c), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). The Fourth Circuit Court of Appeals held that "in exercising its broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for the purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors:

(1) the surprise to the party against whom the evidence would be offered;

(2) the ability of that party to cure the surprise;

(3) the extent to which allowing the evidence would disrupt the trial;

(4) the importance of the evidence; and

(5) the nondisclosing party's explanation for its failure to disclose the evidence."

*Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir.2003).

As an initial matter, the Court's denial of a motion to strike the Plaintiff's expert witness, whose report was disclosed less than three weeks late, while discovery was ongoing and well

before the dispositive motions deadline, has no bearing on the issue presented herein.[1] Disclosure of *twenty-three* new witnesses after the close of discovery is unjustifiable and would result in the "trial by ambush" the Federal Rules of Civil Procedure are designed to prevent.

The number of new witnesses disclosed makes the analysis of *State Farm* facts challenging. The timing of the disclosure, after the close of discovery and only about two months before trial, establishes that it would be difficult for the Defendants to cure the surprise, particularly in light of the number of newly disclosed witnesses, and allowing the evidence would be disruptive. The Plaintiff has not set forth an adequate explanation for the late disclosure of witnesses who would testify on any matters other than the EKG authenticity issue.[2] However, despite the lack of timely disclosure, some of these witnesses were known and anticipated by both parties, as evidenced by their depositions. The Court finds that there would be no surprise or prejudice caused by testimony from late-disclosed witnesses who sat for depositions, and any witness who was deposed will be permitted to testify at trial. To the extent the EKG issue is permitted to be discussed at trial, any of the late-disclosed witnesses who would testify solely regarding that issue will not be excluded. In addition, the Court will not exclude any witness who would be called solely to authenticate records that were exchanged in discovery or are otherwise in the possession of both parties. However, all other late-disclosed witnesses in the Plaintiff's September 9, 2026 supplemental disclosure will be excluded. Accordingly, the Court **ORDERS** that the *Defendants'*

---

1 Indeed, while the Court found the delay in disclosing the expert report to be substantially justified and harmless, the Court noted that "the proper procedure would be for Plaintiff's counsel to file a motion setting forth such good cause prior to the expiration of the deadline…." (Document 79 at fn.1.) Plaintiff's counsel's apparent interpretation of the Court's order as open-ended permission to ignore deadlines is unsupported by the language of the order, by the Rules, and by this Court's long-standing practice, with which Counsel should be familiar as an experienced attorney in this district.

2 The Plaintiff has offered adequate justification for the belated disclosure of those witnesses who would offer testimony only in relation to the EKG authenticity issue, as discovery on that issue occurred on a separate and later timeline.

*Motion in Limine to Exclude Plaintiff's Untimely Disclosed Witnesses* (Document 129) be **GRANTED in part and DENIED in part**, as set forth herein.

*E. Expert C. Metin Savasman, M.D.*

The Court has reviewed the *Plaintiff's Motion to Exclude or Limit the Opinion Testimony of C. Metin Savasman, M.D. Under Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., and Memorandum of Law in Support* (Document 130) and the *Defendants' Response in Opposition to Plaintiff's Motion to Exclude or Limit the Opinion Testimony of C. Metin Savasman, M.D.* (Document 136). Dr. Savasman performed the autopsy on Mr. Marcum and produced an autopsy report. The Plaintiff seeks to exclude Dr. Savasman's characterization of the cause of death as a ground level fall, with contributing causes of hypertension and chronic drug abuse. He points out that the autopsy report does not address or even mention the competing cause of death of cardiac arrest identified by Dr. Berry, the ER physician who called time of death. In addition, Dr. Savasman did not review medical records from Logan Regional Medical Center and was unable to say what other records he may have reviewed prior to reaching his conclusion regarding the cause of death. Therefore, the Plaintiff argues that his testimony as to the cause of death and contributing causes is not reliable, and Dr. Savasman's testimony should be limited to the objective anatomical findings from the autopsy. He also argues that any testimony regarding chronic drug abuse, which was based only on third-hand reports, would be unduly prejudicial.

The Defendants argue that Dr. Savasman formed his opinions based on the autopsy that he personally performed, including examination of Mr. Marcum's brain, heart and other organs, and the information that he possessed at the time of the autopsy. They argue that Dr. Savasman's failure to rule out every other possible alternative cause of death does not render his opinion

inadmissible, given that he had a sufficient factual basis, employed reliable methodology, and reliably applied that methodology to reach his opinion. The Defendants emphasize that Dr. Savasman found significant traumatic injuries to Mr. Marcum's head and brain, which formed the basis of his opinion.

As with the motion regarding Dr. Berry, the Court finds that Dr. Savasman's proposed testimony meets the strictures of Rule 702. He is well-qualified, he personally performed the autopsy, and his findings are based on the application of his medical knowledge to his observations. His failure to consider the medical records and lab tests from Mr. Marcum's final hours may influence the weight the jury chooses to place on his testimony. Cross examination, rather than exclusion, is the appropriate mechanism for informing the jury of any flaws in Dr. Berry's analysis. Therefore, the Court **ORDERS** that the *Plaintiff's Motion to Exclude or Limit the Opinion Testimony of C. Metin Savasman, M.D. Under Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc.* (Document 130) be **DENIED**. However, the Court **DIRECTS** that the parties approach the bench prior to introducing evidence related to any history of drug abuse by Mr. Marcum so that the Court can evaluate its admissibility outside the presence of the jury.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: October 16, 2026

Irene C. Berger

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA